# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: January 8, 2026

```
* * * * * * * * * * * * * *   *
JOSIE RANSOM,                 *
                              *
            Petitioner,       *   No. 22-395V
                              *
v.                            *   Special Master Young
                              *
SECRETARY OF HEALTH           *
AND HUMAN SERVICES,           *
                              *
            Respondent.       *
* * * * * * * * * * * * * *   *
```

*Laura Levenberg*, Muller Brazil, Dresher, PA, for Petitioner.
*James Connor Daughton*, U.S. Department of Justice, Washington, DC, for Respondent.

## DISMISSAL DECISION[1]

On April 6, 2022, Josie Ransom ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program.[2] Pet., ECF No. 1. Petitioner alleged that as a result of receiving the influenza ("flu") vaccine on October 19, 2020, she developed a Table shoulder injury related to vaccine administration ("SIRVA"). Pet. at 1. For the reasons discussed below, this case is dismissed for insufficient proof and failure to prosecute.

### I. Procedural History

Petitioner filed her petition on April 6, 2022. Pet. This case was in the special processing unit ("SPU") from June 2022 to May 2024, during which Petitioner filed medical records and a supplemental declaration. *See* Pet'r's Exs. 7–11. Respondent filed his Rule 4(c) report on May 14, 2024. ECF No. 31. Respondent identified disqualifying conditions for Petitioner's SIRVA Table

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act," "the Act," or "the Program"). Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

claim, namely a prior left cervical radiculopathy diagnosis, a condition or abnormality that would otherwise explain Petitioner's symptoms. *See id.* at 6 (citing the Qualifications and Aids to Interpretation ("QAI"), 42 C.F.R. § 100.3 (a)(I)(C), (c)(10)). The case was subsequently removed from SPU. ECF. No. 32. Upon reassignment to my chambers, I highlighted Respondent's concerns with the case and ordered Petitioner to clarify the nature of her claim by way of amended petition or status report detailing other intentions. ECF No. 34.

On July 1, 2024, Petitioner filed an amended petition adding alternative claims, based on but-for causation and significant aggravation, to her Table claim. ECF No. 35. Petitioner was then ordered to file expert reports and relevant medical literature to explain how her Table claim remained viable and to provide a biological mechanism for her but-for and significant aggravation claims.

After one 60-day extension, on November 11, 2024, Petitioner filed a status report indicating she sent "medical records to two different orthopedists who reviewed this matter to confirm their ability to support vaccine causation. Petitioner was unable to secure an expert report in this matter and wishes to file a motion for ruling on the record regarding entitlement." ECF No. 39. Petitioner requested 60 days to file the motion.

On November 14, 2024, in response to Petitioner's status report, I issued an order outlining how Petitioner had not submitted preponderant evidence to address the current deficiencies in her case. ECF No. 40. She had presented no evidence (aside from her assertion) to distinguish her alleged new injury from her pre-existing radiculopathy, despite the QAI disqualifier. She had not presented evidence of a biological mechanism pursuant to the *Althen* prongs, nor did she have evidence to satisfy the *Loving* factors. I noted that Petitioner had four months to meet the evidentiary standard under *Althen* and was unable to do so. Petitioner was now requesting 60 days to file a motion for a ruling on the record, but there was insufficient evidence to consider in a ruling pursuant to *Althen* and/or *Loving*. I gave Petitioner one more opportunity to file additional evidence to support her Table, but-for causation, and significant aggravation claims. I explained that this evidence should include a medical theory and application of that theory to the facts, and an analysis of an appropriate temporal relationship explained by the medical theory and how it is shown in the medical history. I gave Petitioner until December 13, 2024, to comply with this order. I warned that the inability to produce this evidence would be considered a failure to prosecute and the case would be dismissed.

Petitioner did not produce the requested evidence by the deadline. Instead, on December 10, 2024, Petitioner filed a second supplemental declaration. Pet'r's Ex. 12. This declaration was from Petitioner herself, not an expert, and did not provide additional evidence to support her Table, but-for causation, and/or significant aggravation claims. In fact, the declaration discredited any significant aggravation claim as she stated she "hadn't had any complication with any kind of pain concerning [her] arm prior to [her] flu shot." *Id.* at ¶ 1. The rest of her declaration briefly described the events immediately after her vaccination and the pain she experienced. *See id.* at ¶¶ 2–6. No other filings have been made to date.

2

## II.   Relevant Medical History

Six months prior to vaccination, on March 21, 2020, Petitioner presented to her primary care provider ("PCP") and complained of "constant pain in [her] left shoulder and arm" that radiated into her left arm and had lasted for two weeks. Pet'r's Ex. 2 at 20. On examination, Petitioner had normal range of motion ("ROM") in her left shoulder, but mild pain with palpation of her left shoulder and neck. *Id.* Petitioner was diagnosed with left cervical radiculopathy. Id.

On October 19, 2020, Petitioner received a flu vaccination. Pet'r's Ex. 1 at 5. Twenty-three days later, on November 11, 2020, Petitioner presented to her PCP for left shoulder pain, stating "a week ago she had a flu shot and now she [was] having pain." Pet'r's Ex. 2 at 16. She complained of swelling in the left deltoid region, but denied weakness, numbness or tingling. *Id.* On examination, her left deltoid was mildly erythematous, edematous and warm, and was tender to palpation. *Id.* She had full ROM in her left shoulder. *Id.* Petitioner was diagnosed with cellulitis of the left arm. *Id.*

On December 23, 2020, 65 days after vaccination and over a month since her last visit, petitioner presented to orthopedics for left shoulder pain, stating that she noticed left shoulder pain "[two] days after receiving a flu shot on October 19." Pet'r's Ex. 5 at 11. She described her symptoms as "numbness and tingling that involve[d] her entire hand and forearm and elbow," and "pain in her left trap[ezius] and shoulder blade region especially when she turn[ed] her head to the right." *Id.* She reported full ROM in her left shoulder and that moving her shoulder did not exacerbate her pain. *Id.* The orthopedist examined her cervical spine and noted her cervical ROM was limited with painful flexion and extension, radiating pain to the left shoulder blade and down the arm, and dysesthesia all the way through her fingertips. *Id.* at 13–14. The orthopedist diagnosed her with left-sided cervical radiculopathy. *Id.* at 14. The next day, on December 24, 2020, Petitioner presented to the emergency department ("ED") for left upper quadrant pain and chest pain, and examination revealed no evidence of acute deep vein thrombosis or superficial thrombosis in the left arm. Pet'r's Ex. 4 at 16.

On January 19, 2021, Petitioner returned to the ED for "left arm pain since her flu vaccine on 10/19/20," stating that her pain began two days after her vaccination. Pet'r's Ex. 4 at 24. She complained of pain starting at the base of her neck and radiating across the top of her shoulder to her elbow, as well as intermittent numbness and tingling in her left forearm. *Id.* On examination, Petitioner had increased pain in her left shoulder and arm with shoulder flexion, and full ROM of the left elbow and wrist. *Id.* at 27. A left shoulder X-ray revealed mild left glenohumeral arthritis but was otherwise normal. *Id.* at 30. A cervical spine X-ray revealed bony degenerative changes in C6-C7. *Id.* Differential diagnoses included cervical radiculopathy, rotator cuff injury, muscle spasm, thoracis outlet syndrome, and malignancy. *Id.* at 26. The physician noted that "her symptoms are most consistent with cervical radiculopathy," referred Petitioner to neurosurgery, and prescribed a curse of oral steroids and Valium for muscle spasms. *Id.* at 27.

On April 28, 2021, over six months after vaccination, Petitioner presented to neurology and stated that her pain began on October 20, 2020, but also that the "day of a flu shot she developed pain in [her] deltoid near [the] shot site." Pet'r's Ex. 8 at 11. On examination, the neurologist observed mild weakness in her left deltoid and decreased sensation in her left fifth

3

digit. *Id.* at 13. The neurologist diagnosed Petitioner with "cervical disc disorder at C5-C6 level with radiculopathy," noting that "weakness of the left deltoid and subjective pain and numbness in the left arm maximally in the left forearm would be most typical of a C6 pinched nerve." Id.

On August 5, 2021, Petitioner presented to neurosurgery and reported radiation of left arm pain to her left upper arm, elbow, forearm, wrist, hand, thumb, index finger, and fifth finger, which was exacerbated by turning her head. Pet'r's Ex. 10 at 3. She complained of a "10-month history of severe neck pain, left C6 radicular type pain and left arm weakness." *Id.* The neurosurgeon noted that an MRI showed a large left-sided herniation at C5-6 with stenosis at C4-C7 and diagnosed her with cervical spondylosis with radiculopathy. *Id.* He recommended surgery to decompress and stabilize her cervical spine, and Petitioner elected to move forward. *Id.*

On October 11, 2021, Petitioner underwent a cervical discectomy and fusion. Pet'r's Ex. 10 at 13–14. At a post-operative visit on November 10, 2021, Petitioner reported reduced pain and was not using pain medication. *Id.* at 23. When Petitioner returned to neurosurgery on January 26, 2022, she continued to report bilateral neck and shoulder pain but had overall improvement of her preoperative symptoms. *Id.* at 28.

### III.   Discussion

To receive compensation under the Program, Petitioner must prove either (1) that she suffered a "Table Injury"—i.e., an injury falling within the Vaccine Injury Table—corresponding to the vaccination, or (2) that she suffered an injury that was caused by a vaccine. *See* §§ 13(a)(1)(A), 11(c)(1). Petitioner did not provide any response to the disqualifications of her Table claim. Further, the record does not contain persuasive evidence that Petitioner's alleged injury was caused by or significantly aggravated by the vaccine alleged.

Under the Act, petitioners may not be given a Program award based solely on their claims alone. Rather, the petition must be supported by medical records or the opinion of a competent physician. § 13(a)(1). In this case, the medical records are insufficient to prove Petitioner's claim. None of her treating providers contemplated vaccine causation despite Petitioner repeatedly telling the providers that her shoulder pain began after her vaccination. Rather, she was consistently diagnosed with cervical radiculopathy. This is consistent with her pre-vaccination diagnosis. Further, Petitioner has not filed a supportive opinion from a treater or an expert witness to distinguish her pre-and post- vaccination symptoms or explain how her radiating pain, numbness, and tingling are consistent with SIRVA. Therefore, this case must be **dismissed for insufficient proof and for failure to prosecute. The Clerk shall enter judgment accordingly**.[3]

   **IT IS SO ORDERED.**

/s/ Herbrina D. S. Young
Herbrina D. S. Young
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.